AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America<br>v.<br>WILLIAM CESAIRE,<br><br>Defendant(s) | ) ) ) ) ) ) ) ) | Case No. 20-6466-Hunt |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __7/26/19 through 8/4/20__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 846 and 841(b)(1)(A). | Possession with Intent to Distribute Heroin and 50 Grams or more of Methamphetamine |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

DANNY POLO, TFA DEA
Printed name and title

Sworn and subscribed telephonically

Date: 09/24/2020

_____
Judge's signature

City and state: Fort Lauderdale, Florida

PATRICK M. HUNT, U.S. MAGISTRATE JUDGE
Printed name and title

## AFFIDAVIT

I, Danny Polo, being duly sworn, depose and state as follows:

1. I am a Task Force Agent ("TFA") with the Drug Enforcement Administration ("DEA") assigned to the Miami, Florida Field Division, Enforcement Group 14, and have been since approximately November 2018. Additionally, I am a Detective for the Broward County Sheriff's Office. I have received specialized training in illegal drug smuggling and distribution investigations; have participated in numerous illegal drug investigations; and have debriefed defendants, informants, and witnesses who had personal knowledge of major drug trafficking organizations. I have participated in all aspects of illicit drug investigations, including: the questioning of witnesses, the execution of search and arrest warrants, the use of undercover officers, acting myself as an undercover officer, the utilization of informants, conducting surveillance, analyzing information obtained from court-ordered pen register/trap and trace intercepts, and analyzing telephone toll information obtained as a result of administrative subpoenas issued by the DEA.

2. The information contained in this Affidavit is submitted for the limited purpose of supplying probable cause to believe that from on or about July 26, 2019, through on or about August 10, 2020, WILLIAM CESAIRE did knowingly and willfully possess with intent to distribute a mixture and substance containing a detectable amount of heroin, and 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A). Because of its limited purpose, this Affidavit does not contain all the information known to law enforcement regarding this investigation. This Affidavit is based on personal knowledge as well as information provided to me by other law enforcement officers.

3. On or about July 26, 2019, an undercover law enforcement officer ("UC") was on foot in the area of 2025 E. Atlantic Blvd., in Pompano Beach, in the Southern District of Florida. The UC was approached by an individual, who asked if the UC was interested in purchasing drugs. The individual said he would sell the UC 8 capsules of heroin for $100 and also had crack cocaine for sale. The UC recognized the individual from prior investigations as CESAIRE, and confirmed his identity through law enforcement databases. At the end of the conversation, CESAIRE handed the UC a purported heroin capsule to sample, and provided a phone number ending in 7791, for the UC to call if he wanted to purchase drugs.

4. From on or about August 27, 2019, through August 28, 2019, the UC placed recorded calls to CESAIRE to discuss the purchase of heroin. On or about August 28, 2020, the UC met with CESAIRE near the site of their first meeting in Pompano Beach. The meeting was surveilled and recorded. CESAIRE approached the UC's vehicle and handed the UC five capsules of a substance which later field tested positive as heroin in exchange for $100.

5. From on or about September 16, 2019 through on or about September 18, 2019, the UC placed recorded phone calls to CESAIRE to discuss the purchase of heroin. On or about September 18, 2019, the UC met with CESAIRE in the area of 101 E. Atlantic Blvd., Pompano Beach. During the meeting, which was surveilled and recorded, CESAIRE handed the UC six capsules of a substance which later field tested positive as heroin in exchange for $100.

6. From on or about November 14, 2019 through on or about November 18, 2019, the UC placed recorded phone calls to CESAIRE to discuss the purchase of heroin. On or about November 18, 2019, the UC met with CESAIRE in the area of 101 E. Atlantic Blvd. During the meeting, which was surveilled and recorded, CESAIRE gave the UC a blue bag containing a substance that later field tested positive as heroin in exchange for $100.

7.     From on or about November 19, 2019 through on or about November 20, 2019, the UC placed recorded phone calls to CESAIRE to discuss the purchase of $1200 worth heroin. On or about November 20, 2019, the UC met with CESAIRE in the area of 1000 SW 46th Avenue, in Pompano Beach. During the meeting, which was surveilled and recorded, CESAIRE gave the UC a knotted plastic bag containing approximately 9.8 grams of a substance that later field tested positive as heroin in exchange for $1200.

8.     On or about March 4, 2020, the UC placed recorded phone calls to CESAIRE and the two discussed the purchase of both "boy" (slang for heroin) and "Tina" (slang for methamphetamine). CESAIRE indicated that he had heroin, but needed to call someone to obtain methamphetamine. CESAIRE agreed to sell the UC one-eighth of an ounce of heroin for $500, and one ounce of methamphetamine for $700. On or about March 4, 2020, the UC met CESAIRE in the area of 4740 NW 24th Ct. in Lauderdale Lakes. During the meeting, which was surveilled and recorded, CESAIRE gave the UC a bag containing approximately 4.2 grams of suspected heroin and 29.4 grams of suspected methamphetamine in exchange for $1200. Later field testing confirmed the presence of heroin and methamphetamine in the substances.

9.     From on or about March 4, 2020 through on or about March 10, 2020, the UC placed recorded calls to CESAIRE to discuss the purchase of methamphetamine. CESAIRE agreed to sell 3 ounces of methamphetamine for $2100. On or about March 10, 2020, the UC met with CESAIRE in the area of 201 E. Sample Road, in Pompano Beach. During the meeting, which was surveilled and recorded, CESAIRE gave the UC 3 plastic bags, each containing one ounce of a substance that later laboratory testing showed to be 95% pure methamphetamine, in exchange for $1200.

10.    On or about March 13, 2020, the UC placed recorded calls to CESAIRE to discuss

3

the purchase of heroin. CESAIRE agreed to sell the UC $500 worth of heroin. On or about March 13, 2020, the UC met with CESAIRE in the area of 101 E. Atlantic Blvd., in Pompano Beach. During the meeting, which was surveilled and recorded, CESAIRE gave the UC a plastic bag containing 4.1 grams of a substance that later field tested positive as heroin in exchange for $500.

11. On or about August 4, 2020, the UC placed recorded calls to CESAIRE to discuss the purchase of heroin. CESAIRE agreed to sell the UC $260 worth of heroin. On or about August 4, 2020, the UC met with CESAIRE in the area of 101 E. Atlantic Blvd., in Pompano Beach. During the meeting, which was surveilled but not recorded due to device failure, CESAIRE gave the UC two plastic bags, each containing 1 gram of a substance that later field tested positive for heroin in exchange for $260.

12. Based on the foregoing facts and information, your Affiant respectfully submits that there is probable cause to believe that from in or about July 26, 2020, through on or about August 4, 2020, WILLIAM CESAIRE did knowingly and willfully possess with intent to distribute a mixture and substance containing a detectable amount of heroin, and 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A).

FURTHER YOUR AFFIANT SAYETH NOT.

DANNY POLO, TASK FORCE AGENT
DRUG ENFORCEMENT ADMINISTRATION

Attested to by the applicant telephonically in accordance
with the requirements of Fed. R. Crim. P. 4.1
this 24 TH day of September, 2020

PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

4